The complainant sold to the defendants a house and lot, 186 Park avenue, Madison, beginning two hundred and seventy-five feet north of Cedar avenue, and by mistake of the scrivenor conveyed to them 178 Park avenue, beginning seventy-five feet north of Cedar avenue. The bill is to correct the description in the deed and in a purchase-money mortgage given by the defendants. There is no controversy as to the mutuality of the mistake and the complainant is entitled to a reformation unless the defendants sustain their counter-claim to rescind the sale for fraud. They set up that their written contract with the complainant calls for a conveyance free of encumbrance except a mortgage, whereas the lot is subject to restrictive covenants and reserved rights of way; that although their deed and the mortgage they gave *Page 66 
each stipulate that "his conveyance is made subject to retrictions of record," they were ignorant of the restrictions and the reference to them in the documents, and that they accepted the deed and executed the mortgage upon the assurance of the complainant's lawyer that they conformed to the contract. They further charge that they were represented at the closing by the complainant's lawyer, at the instance of the complainant, and that he failed them to the knowledge of the complainant.
The lot is No. 118 and the southerly half of lot 117 in a subdivision of a tract of land known as "Oak Knoll," laid out in fifty-foot lots on a plan by Elizabeth H. Binsse, who sold the tract intact to the Madison Homes Company subject to restrictions as to character of buildings and their locations. The Madison Homes Company put the lots on the market under a general community building scheme of restrictions inclusive of those in the Binsse deed, but more extensive and onerous, so that an observance of the Madison Homes Company restrictions would be in all respects a compliance with the Binsse restrictions with a single exception, that a garage may be part of or attached to a dwelling while under the Binsse restrictions garages are required to set back at least sixty feet from the front street line. There are other variations applying to corner lots. Binsse also conveyed subject to the zoning ordinances of the town of Madison, passed before the constitutional amendment, but that added no burden, for the ordinances, if lawful, were obligatory as a matter of law. Whether the Binsse restrictions are enforceable is an open question. If by the conveyance of the tract to the Madison Homes Company Mrs. Binsse had no lots remaining to be protected then, of course, they are of no avail, but a recital in her deed to the company, that the tract was part of a larger tract owned by her, would indicate that they have virtue.
The complainant, the president of the Madison Homes Company, purchased a number of lots from the company and built dwellings upon them, among others the one he sold to the defendants. In its deeds to the complainant under the *Page 67 
inapt caption "restrictions," the company reserved a right of way for electric light, power and telephone poles over, across and along the rear line of all lots and a right to enter the lots for the purpose of maintaining poles and wires, and a right of way was also reserved for sewers across the rear of certain lots, including a portion of the lot sold to the defendants, and the restrictions and reservations are declared to be conditions and restrictions running with the land and to be taken as real covenants and enforceable against his heirs and assigns. The complainant's contract with the defendants makes no reference to them; his deed to them subjects the lot to "restrictions" of record, and so does their purchase-money mortgage.
In his explanation of the discrepancy between his contract and the deed the complainant says that the defendants knew of the community scheme; that he had given them a circular copy of the restrictions, issued by the company, at one of their four meetings during the negotiations, but as to this he is not at all circumstantial. The defendants say it is untrue, that never was there any intimation of their existence, and the contract, which the complainant drew, in which he failed to mention them, would indicate that he is mistaken. The contract was signed in January, 1927, four days after negotiations began. Title was closed March 1st following. In the meantime the defendants were assured by the complainant that the title was clear; that it had then recently been insured by the Fidelity Title and Mortgage Company; that there was no need for searches and that his, the complainant's, lawyer would attend to the transfer. Their confidence was enlisted and in their inexperience, it was their first purchase, they followed as they were led. On the day before the time fixed for closing the complainant unexpectedly called them to the lawyer's office; it was after office hours. They found the papers ready; some changes had to be made; the dotted line was pointed out to them and they signed. The cash adjustment was made, they paid the lawyer for his services and left. All within thirty minutes. The complainant and his lawyer contend that Mr. Robertson read the deed or read at it, anyhow, *Page 68 
that he had it in his hand, looking at it. The lawyer claims he told the defendants that the lot was conveyed subject to restrictions of record, that he told them and no more because the complainant interrupted, stating that they knew what they were as he had previously given or shown them a copy, and that he, the lawyer, took this to be so because the defendants made no reply. He further explains that he did not engross the restrictions in the deed to save the recording fee. The complainant tells the same story, but goes further and insists that the defendants were told of the omission of the restrictions from the deed and the reason — a saving of less than a dollar. The defendants affirm with equal positiveness that neither deed nor mortgage was read to or by them and that no mention whatever was made of restrictions. Assuming that the statement was made by the lawyer, that the conveyance was subject to restrictions of record, was it heard and, if heard, comprehended? And if the complainant interposed, that the defendants knew all about them, the truth of that statement is not borne out by the evidence. The fact is the lawyer, also attorney for the Madison Homes Company and familiar with its community scheme, knowing that the contract called for a free and clear title, took upon himself to insert in the deed that it was subject to restrictions of record without disclosing to the defendants that he had written into the deed burdens that were not in the contract. Representing both parties it was his duty to make a full disclosure of the restrictions and that they included reservations of rights of way and also property restrictions imposed by the earlier Binsse deed or at least to confirm the assertion of the complainant, that the defendants knew of the restrictions and reservations by something more than their mere silence.
The failure of the defendants to read and understand their deed and the mortgage they signed cannot be said to be carelessness moving equity to deny relief. It was their privilege to entrust their affairs to the complainant's lawyer selected or acquiesced in by him to render the dual services. The confidence invited cast upon the complainant the burden of establishing that it was reasonably guarded. That, he had *Page 69 
not done. The complainant was sensible, and if not sensible nevertheless charged in law with notice that the defendants were of the belief that the deed and mortgage conformed to the contract, and also that essential facts were suppressed. It was his duty to speak, and his or his lawyer's failure to speak, and fully and truthfully, was a fraud.
The imposition was injurious and actionable and the defendants are entitled to relief. Propper v. Colson, 86 N.J. Eq. 399.
To reform the deed and mortgage as sought by the bill, and to strike from them the wrongly interpolated "subject to restrictions of record" would be neat relief under the maxim "he who seeks equity must do equity," but it would leave the defendants with that which they did not contract to purchase. The complainant stands, relatively, in the position of a vendor asking specific enforcement of a contract he himself cannot perform. The deed and mortgage will be declared nullities and the complainant will be ordered to return to the defendants the cash purchase price, with interest. They will be charged with the use and occupation. The matter will be referred to a master to report an equitable adjustment.