The bill is to foreclose a purchase-money mortgage. The defense is that the purchase of the property for which the mortgage was given in part payment was induced by fraud and the prayer of the counter-claim is to set aside the sale and cancel the mortgage, and to recover the balance of the purchase price and also moneys laid out in improving the mortgaged premises.
The complainants' tax title to the land originated in a tax sale held February 10th, 1904, more than twenty-seven years ago, under the authority of chapter 193, laws of 1898; a Martin act replica. In the counter-claim first filed, the defendant set up that the complainants falsely represented that their title was not a tax title. He failed to prove the representation, but it appearing at the hearing that the complainants did not disclose that theirs was a tax title, he amended and set up that the complainants fraudulently suppressed that they were conveying a tax title upon which no building and loan association would lend money on a mortgage; that the defendant was illiterate; that he had not independent counsel because complainants persuaded him to accept their lawyer to close the title; that he relied on complainants' lawyer that he was getting a marketable title upon which a building and loan association would make a loan on a mortgage; that he didn't know the meaning of a tax title; that he tried repeatedly to get a loan on mortgage from building and loan associations to repair the buildings on the mortgaged premises, but they refused because his was a tax title. *Page 115 
The defendant is an ignorant and illiterate workman; that sticks out. The complainants prevailed upon him to be counseled by their lawyer, and the defendant, in confidence, paid his money, took his deed and gave the mortgage in the belief that he was getting a marketable title, and there is no hesitancy in saying that the complainants and their lawyer "took him in;" and that had he his own counsel the title would not have been passed because it was a tax title.
It is well known that tax titles are not looked upon with the same favor as those by personal grant, because of the uncertainty that the statutory proceedings have been strictly pursued and that all parties in interest have had their day in court, to the end that the right of redemption has been effectually foreclosed. Courts scrutinize them meticulously, and with anxiety to restore the property to the owner, regarding the due performance of every step in the proceedings, even in the most minute particulars, as a condition precedent to the validity of the sale. HarringtonCo. v. Horster, 89 N.J. Eq. 270; Henry C. McCandless, Inc., v.Schaffer, 103 N.J. Eq. 170.
Here, the tax title is not assailed. So far as appears it is perfect. If that were decisive the transaction would not be open to attack. A perfect tax title is not to be stigmatized simply because it is a tax title. That would be to discredit our statutes upon which it is based and would impair, or altogether frustrate, the means for the collection of taxes. Some degree of uncertainty exists in all titles, however acquired.
Though the title be irreproachable, the view is entertained that had the defendant promptly repudiated the deal upon discovering that he had only a tax title and could not get a loan on that sort of title, he would have been entitled to relief, because complainants' lawyer failed in the duty he owed him, to advise him that the title was not generally acceptable; advice that he would have had from independent counsel. Scherer v.Robertson, 105 N.J. Eq. 65. But here lies the obstacle to granting relief. Immediately after the sale, in July, 1928, a building and loan association refused the defendant a mortgage loan because he had but a tax title. *Page 116 
He then applied to others with like result and for the same reason, and he knew, as he now knows, that he had been imposed upon in the manner of which he now complains, but not until he filed his counter-claim, more than eight months after learning the nature of his title, did he move to rescind the transaction. In the meanwhile, and with full notice, he proceeded and continued to make extensive improvements on the building on the premises, costing thousands of dollars, for which he is responsible and for which the mortgaged premises are lienable, and have been liened, and he, ever since the purchase, has been and now is in possession of the premises and has always collected the rents and appropriated them.
To entitle one to relief upon rescission, the defrauded party must act expeditiously, and, upon the discovery of the fraud, promptly repudiate the transaction and offer to restore as the circumstances will permit. The failure to act for more than eight months after the vendee knew he had been mislead, affords plenary proof of an election to abide by the contract, and is fatal to a recovery upon rescission. Faulkner v. Wassmer, 77 N.J. Eq. 537.
It is argued that the long lapse of time between notice and repudiation should not be treated as conduct-evidence of an election because of defendant's denseness. It is said he was ignorant of the meaning of "tax title," and not knowing the meaning, did not conceive that his recourse was to rescind. But when, in July, a building and loan association and later two or three others refused him because of his tax title, it must have been borne in on him that he had what he did not bargain for and could not utilize; that he had been deceived. Even an infant rejects the sour nursing bottle.
The counter-claim is dismissed with the observation that had it been sustained, the defendant could not have recovered the moneys laid out for improvements. The complainants failed in a duty, the result of which only a court of equity may redress. They were not guilty of a deceit, cognizable at law, redressable by an award for damages in this court. Faulkner v. Wassmer, supra.
The complainants are entitled to a decree. *Page 117