The defendant sold his garage business to the complainant for $2,000 in cash and a note for $2,500. As a part of the bargain, his company, Mildor Realty Company, leased to the complainant the garage for a term of years. To induce the purchase and the lease, Galowitz, the defendant, represented that the monthly income from storage of cars was $836 and that there were seventy-two cars. The fact is, that the rentals were $717 and there were seventy-four cars. It so appears from a list furnished by the defendant five or six days after the sale. His man, Fisher, night man in charge of the garage, says there were seventy-four cars in storage. It is a disputed question whether there were that many, when delivery was made on the day of sale, for at the end of the first month the complainant had succeeded in collecting but $610; missing tenants account for the discrepancy. Whether they had left before or after the sale is a sharp question. The evidence favors the complainant, but be that as it may, there were not more than seventy-four cars, nor more than $717 in available rentals at the time the representation was made. The sum of the rentals, to the last dollar, was of utmost importance to the complainant, for he bought the business as a means to a living and staked his all; and the defendant knew.
Galowitz, first off, denied making any representation whatever; his attitude being that the complainant bought a "pig in a poke," but later modified his stand, protesting that he represented the monthly income to be $768. In the circumstances even a $68 shortage was material. He produced another list of tenants — seventy-nine in number — whose aggregate rental totaled $768. Galowitz says the second list was taken from his books, but he failed to fetch his books to court. It is obvious that it was prepared to bolster up the defense and if the additional names listed are of tenants who once were his customers, they were not when the sale was made for it is proved beyond doubt that at most there was but seventy-four cars, and their rentals were $717. The *Page 306 
representation that the income was $836 monthly was made to the broker who negotiated the deal, and again to the complainant to persuade him to buy and it was repeated to his bookkeeper, and the three so testified, and though vehemently disputed by Galowitz, no doubt is entertained of the unreliability of his denial.
There are other allegations of representation: That approximately 6,000 gallons of gasoline and two barrels of oil were sold monthly, that the gross monthly income was more than $1,100, and that the complainant would make a monthly profit of $265, but they are not alleged to be false and consequently are not in issue.
Responsibility is sought to be avoided on the ground that the complainant delayed renouncing the contract, that he continued to carry on the business after he discovered the misrepresentations and that he elected to affirm the sale. Prompt repudiation after discovery of fraud is essential to rescission. Faulkner v.Wassmer, 77 N.J. Eq. 537. It is strange that the complainant did not discover the fraud when he got the list of tenants a few days after the sale. His explanation is that he did not cast up the items until he found the monthly income short. His bookeeper makes the same explanation. However, at the end of the calendar month after the sale, having taken in only $610 and discovering that the listed rentals amounted to but $717, and not $836 as represented, the complainant demanded the return of his money and the notes, and being unable to pay the rent, was summarily dispossssed within the next twenty days; the defendant taking the business. During that time, the complainant carried on the business indifferently and under protest until he was ejected. That he stayed on, disgruntled, until put out, cannot be deemed an election to affirm the sale nor can the fact that during that time he collected some rents in advance, in an effort to retrieve some of his loss, be regarded as a ratification. It is not essential to a rescission that the injured party surrender the consideration of a contract procured by fraud when the wrongdoer refuses to make *Page 307 
restitution. An offer to restore is all that is required.Pidcock v. Swift, 51 N.J. Eq. 405. That is the rule at law. In equity, it is not a prerequisite to a suit for rescission.Pom. Eq. Jur. § 2110; DuBois v. Nugent, 69 N.J. Eq. 145.
It is also put forth as evidence of ratification that the complainant promised to pay the rent and begged for time, after he knew of the fraud. Galowitz so testified, but in the circumstances, and denied by the complainant, it is as undependable as his persistent denials were unbelievable, that he made no representations as to the income of the business to induce the sale. His affirmation of the one and his denial of the other do violence to common experience.
There will be a decree that he remit the cash and return the note, and that the lease be canceled.