The defendant obtained from the complainant an automobile public liability policy numbered AP-80330, dated April 16th, 1929, covering six of its auto trucks. It was to remain in force for one year. There was an endorsement on it as follows:
 "ENDORSEMENT (More Automobiles than Operators)
In consideration of the reduced premium rates at which this policy is written and of the statement made by the Assured thathe does not own more automobiles than those described in thepolicy, and that there will not be a greater number of persons who operate such automobiles than those named in this endorsement without previous notice to the Company and payment of proper additional premium therefor, it is agreed that without such previous notice to the Company and payment of additional premium this policy covers the operations of the automobiles described only while such automobiles are being personally driven by JamesHunter, William Avensky Henry Henkel, Jr., or by any person when accompanied by such named driver. If any of the named drivers is a hired chauffeur, it is agreed that the policy is extended to cover while such automobiles are being driven by any employed as his substitute by reason of such chauffeur's illness or leave of absence, and by any one employed as his successor. Notice of such successor or substitute shall be furnished the Company within ten (10) days from the date of employment of such successor or substitute. This policy also covers the named assured while the automobiles described are being operated by person connected with a repair shop or garage by reason of repairs to, calling for, or delivery of any such automobile.
Nothing herein contained shall be held to alter, vary or waive any of the agreements, conditions, or statements of this policy, except as herein stated, nor shall this endorsement bind theCompany until countersigned by a duly authorized representativeof the Company.
This endorsement becomes effective on the 16th day of April, 1929, noon, standard time.
Attached to and forming part of Policy No. AP-80330 dated April 16th, 1929, issued by the Bankers Indemnity Insurance Company, to Henry Henkel and Sons, Incorporated.
__________________________
H.P. JACKSON Countersigned: __________________________ Authorized Agent
President." *Page 246 
On February 1st, 1930, one of the trucks, while being operated by William Henkel, son of Henry Henkel mentioned in the said endorsement, injured Frieda Biebel. She instituted an action against the defendant in the New York courts. The defendant communicated the fact to the complainant, which disclaimed liability, alleging that the driver, operating the truck at the time of the accident, was not one of those mentioned in the said endorsement, nor a substitute for any of them. The action resulted in a judgment for $5,176.05, damages and costs. The defendant called upon the complainant to pay it. It refused. The defendant, then, on March 29th, 1933, instituted an action on the judgment against the complainant in the New Jersey supreme court, Hudson circuit. The complainant filed an answer to this action and issue was joined. The action remained on the supreme court calendar until sometime in the April term, 1934, when it reached the daily call, or calendar. On July 2d 1934, on the application of the complainant, this court issued a preliminary restraint of the law action. The suit was heard on final hearing.
The bill seeks a cancellation, or reformation of the policy upon the ground of fraud. Complainant contends that the substitution of William Henkel as a driver in the place of one of the three persons mentioned in the endorsement on the policy, is a breach of warranty which voids the policy. It directs attention to that part of the endorsement which says: "This policy covers the operation of the automobiles described only while such automobiles are being personally driven by James Hunter, William Avinsky and Henry Henkel, Jr., or by any person when accompanied by such named driver." The defendant argues that the endorsement on the policy is not binding since it contains the following provision: "Nothing herein contained shall be allowed to alter, vary or waive any of the agreements, conditions, or statements of this policy, except as herein stated, nor shall this endorsementbind the company until counter-signed by a duly authorizedrepresentative of the company." Attention is directed to the fact that the endorsement is not counter-signed. *Page 247 
That being so, it lacks mutuality and, therefore, is ineffective.
The counsel for the defendant further observes that all that can reasonably be inferred from the endorsement is: First, "the assured was not permitted to own more than six automobiles." There is no allegation of violation of such limitation. Second, "that no more than three persons could operate such automobiles unless notice was given to the insurer and an additional premium paid." It is to be observed that the endorsement carried the heading "More Automobiles than Operators." The limitation appears to be on the number of persons driving at one time rather than on the specific persons named. Third, "if the assured did use more than three operators at any one time, without giving notice and paying an additional premium, it did not avoid the policy but limited its coverage to the operation of the automobiles by the named drivers, or their substitutes, or successors." The defendant could have had six drivers and operated six automobiles at one time, without notice to the insurer or the payment of any additional premiums; the penalty which would, or could, follow would be that the assured was not covered, unless an accident occurred through the operation of the truck then being driven by one of the three named drivers, or one who was a substitute for, or successor to, one of them, in which latter event the insurance company would be liable. That being so, where is there support for the allegations of fraud; I can find none. There is no allegation indicating that the assured represented that it did not have William Henkel in its employ, or that he had not operated the cars. If he were driving regularly when the three named drivers, or their successors, were also driving, or he was a substitute without notice, and had an accident, then the policy certainly would not apply; but, to say that his act in driving was a fraud upon the complainant, is supplying an atmosphere that did not exist at the time of the happening of the accident. Fraud can apply only to a representation in effecting a contract; it does not apply to a warranty which is part of the contract. I make that observation because of the allegation of the bill as to "fraudulent warranties;" there could be *Page 248 
a fraudulent representation, but I do not conceive how there could be a fraudulent warranty. To void a contract by fraud, it must be established that the fraud induced the making of the contract.
The complainant charges that at the time the policy was written the defendant had in its employ Paul Giampi and William Henkel as regular drivers and continued to use them thereafter. The evidence shows that such is not the case. Assuming that it were, it had nothing whatever to do with the issuance of the policy, since the policy has no prohibition against the employment, or use of more than three regular drivers; it provides that there shall be no coverage unless the three named drivers or their substitutes or successors were driving at the time of an accident. If William Henkel and Giampi were employed as regular drivers, the most that could be claimed because of that situation, would be a breach of contract on the part of the defendant; and it could be set up as a defense in the action at law. Under such circumstances, I cannot conclude there was fraud in the inception of the contract which would entitle the complainant to a rescission.
The answer to the law action which was filed May 15th, 1933, does not allege fraud in the employment of William Henkel; but it does assert such employment was a breach of contract. One year later the bill herein was filed, and then, for the first time, the allegation of fraud was made.
Counsel has called attention to the fact, and I consider it pertinent, that the complainant on March 17th, 1930, had knowledge of the facts upon which it alleges fraud; but it made no assertion of it until the institution of the present suit. It appears that the complainant through its agent, sent a communication on March 4th, 1930, to the defendant disclaiming liability not because of fraud, but because William Henkel was not one of the named drivers. While it was the duty of the complainant after it contended that there was fraud in the inception of the contract to take immediate steps, or to take steps within a reasonable time to effect a rescission, it waited until July, 1934, which was more than four years after the discovery of the so-called fraud, and approximately a year and a half after it had received notice from the defendant *Page 249 
that it would be held liable on the policy. The conclusion which must necessarily follow from its attitude, or its failure to institute proceedings to rescind, is that it elected to rely upon an alleged breach of contract, rather than upon fraud, if it were sued upon the policy.
I think the reasoning of the court of errors and appeals in the case of Faulkner v. Wassmer, 77 N.J. Eq. 537, applies to the instant case. In that case, the court, in part, said as follows:
"We agree with the learned vice-chancellor that Mrs. Faulkner purchased the lot in question upon an untrue representation of such a nature that, upon the discovery of its untruth, she was entitled to elect to rescind the sale. We do not, however, agree that such election was still open to her four months later when the present bill of complaint was filed declaring for the first time her election to rescind. At this time, viz., November 28th, 1908, her right to elect, which arose on or about July 10th, 1908, no longer existed, not upon the doctrine of laches, discussed in the conclusions filed in the court below, but upon the ground that the lapse of such a length of time under the circumstances afforded plenary proof of an election by her not to rescind to which conclusive effect should have been given.
"The learned vice-chancellor was in error in testing the complainant's right to elect solely by the doctrine of laches and notably so in conceiving that the decision of this court inDennis v. Jones, 44 N.J. Eq. (17 Stew.) 513, turned upon that doctrine which, in point of fact, was not even mentioned in the opinion of Chancellor McGill in this court. Dennis v.Jones was decided not upon the quasi-estoppel that is involved in the doctrine of laches, but upon a totally different ground, viz., that of conduct-evidence.
"Authorities cited by Chancellor McGill had settled the law `that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after the discovery of the fraud and that when once he elects he must abide by his decision;' other cases cited in the opinion had held that `delay in the rescission of the contract is evidence of a waiver of the fraud and *Page 250 
an election to treat the contract as valid.' The approval and adoption of both of these lines of decision by this court inDennis v. Jones resulted in our holding `that, after the appellants had knowledge of all the substantial features of the alleged fraud and were fully aware of the deceit which had been practiced upon them, they so acted as to afford plenary evidence of an election to abide by their contract,' and that `their election thus made was irrevocable.'
"It is this rule, and not the doctrine of laches, that Dennis
v. Jones lays down and illustrates.
"To the same effect is the more recent case of Clampitt v.Doyle, 73 N.J. Eq. (3 Buch.) 678. The rule of Dennis v.Jones is so clearly stated by Chancellor McGill that in actual practice the only question likely to arise is whether or not the delay was such as to warrant its application, i.e., whether the vendee's failure to act extended beyond the period within which one would naturally act who knew that to act effectively he must act promptly. The question in itself is not peculiar to this class of cases; it is present in all cases involving a reasonable time, concerning which, it is admitted, that no hard and fast rule obtains and also that the difficulty that exists in cases that lie close to the line disappears with the lapse of time that has been permitted to intervene. Thus the question whether a landowner, who is under a duty to make repairs upon notice, is in default on the very day he had notice or the day after may present difficulties that entirely disappear if he has suffered weeks and months to elapse. The case before us is of this latter character in that an election that could in reason have been made within a few days, or at most a few weeks after the right to make it arose, was, without any adequate excuse that was consistent with promptitude of action, delayed for months. It is precisely this conduct that (as we decided in Dennis v. Jones andClampitt v. Doyle) affords plenary proof of an election to abide by the contract, which is irrevocable. For this reason the bill of complaint should have been dismissed by the court of chancery, and for this reason the decree of that court must be reversed." Snyder v. Czerminski, 108 N.J. Eq. 113; Plotkin v.Golowitz, 109 N.J. Eq. 304. *Page 251 
The action upon which the judgment was rendered and upon which the defendant seeks to recover from the complainant on its policy, took place some five years ago. Schuler v. Schuler,114 N.J. Eq. 220. Apropos of such a situation, we find in 32Corp. Jur. 1266 § 470, the following:
"Prior to the loss the company may rescind a policy procured through mistake or fraud. A rescission cannot be made after the occurrence of a loss under the policy."
It does not appear that the complainant has offered to restore the defendant to the status quo. It has made no offer of repayment or tender of repayment of premiums received before the suit was brought. Green v. Stone, 54 N.J. Eq. 387; Pidcock v.Swift, 51 N.J. Eq. 405.
"As a rule, when the company seeks cancellation or rescission, it must, as a condition of obtaining relief, do equity by returning or tendering back the premium paid, with interest. But if the policy is illegal as being in violation of statute, the company may obtain a cancellation by suit without returning or tendering the unearned premium." 32 Corp. Jur. 1269 § 475.
It seems hardly necessary to state the elementary principles of fraud which must be present in order to successfully prosecute a suit for that reason, viz.: (1) a false representation as to an existing fact; (2) made with knowledge of its falsity and with intent to deceive; (3) that it did deceive; (4) that it was material.
I feel that no fraud has been established and I believe that the complainant's failure to countersign the endorsement relieved the defendant from being bound by its terms. I shall advise a decree dismissing the bill. *Page 252