20 N.J. Super. 246 (1952)
89 A.2d 702
HARRY M. AJAMIAN, PLAINTIFF-APPELLANT,
v.
ISIDORE SCHLANGER, HENRY SCHLANGER AND SIDNEY SCHLANGER, TRADING AS I. SCHLANGER & CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1952.
Decided July 1, 1952.
*247 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Aaron Ajamian, of the New York Bar, argued the cause for appellant (Messrs. Hollander and Leichter, attorneys; Mr. Edwin P. Gordon, of counsel).
Mr. Isadore Glauberman argued the cause for respondents.
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On March 3, 1947, Harry M. Ajamian filed a bill in the former Court of Chancery, which alleged that on June 14, 1946, he entered into a contract with the defendants for the sale to him of an embroidery factory and the business incident thereto for $96,500, and that the transaction was closed on June 28, 1946. He sought rescission on the ground of fraud. The alleged fraudulent misrepresentations were: (1) that this embroidery business produced net profits at the rate of approximately $10,000 per month; (2) that the good will of the business would be included in the sale; (3) that the defendants "had some of the best customers in the trade and that they would introduce the complainant personally to these customers and turn them over to the said complainant"; (4) that the telephone number used by the defendants in the business would be given to the plaintiff for his use; (5) that a certain amount of yarn "would go with the sale of the business as an appurtenance"; and (6) that the machines included in *248 the sale were in good running order. The case was tried in the Chancery Division of the Superior Court and at the end of the plaintiff's case his complaint was dismissed.
The plaintiff testified that he took possession of the leasehold and the embroidery machinery on June 28, 1946. He immediately began to operate the business, and continued such operation until February 1, 1947. He admitted that on July 1, 1946, he discovered that the defendants were not going to turn over their business telephone number to him; that by July 2, 1946, he had discovered that the machines included in the sale were not in proper condition; that by July 10, 1946, he had learned that the defendants were continuing in the embroidery business at a nearby location, and also that he was not going to make $10,000 a month profit from the business; that before July 22, 1946, he found out that the defendants were not going to give him a list of their customers; and that by August 1, 1946, he had learned that the yarn was not of the quality or quantity allegedly represented. Notwithstanding the fact that by August 1, 1946, he had discovered that all the alleged representations were fraudulent, he paid a purchase money note due in August, 1946, and another due in September, 1946. He saw his lawyer and explained the situation to him, but kept on manufacturing goods for the defendants. His bills for this work, dated in July, August and September, 1946, totalled $7,000. On October 4, 1946, he instituted suit in the former Court of Chancery for rescission of the contract, based on the same grounds as alleged in the present suit, but this action was dismissed without prejudice ten days later, on October 14, 1946. Following such dismissal, the plaintiff paid to the defendants $6,000 and interest for the purchase note that was due at that time. Thereafter, he paid monthly notes of $2,000 which fell due in November, 1946, December, 1946, January, 1947, and February, 1947, but in making such payments, he notified the defendants they were made without prejudice. He continued to pay rent for the premises until February, 1947. During the entire period from *249 July, 1946, to February, 1947, he had repairs made to the machinery and paid for these repairs.
A party entitled to rescission on the ground of fraud may either avoid the transaction or confirm it; he cannot do both; and once he elects, he must abide by his decision. When he has discovered the fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, he must thereupon act with diligence and without delay if he desires to rescind; and the transaction will be deemed ratified if he does any material act which assumes the transaction is valid. His continued dealing with the property purchased, after knowledge of the fraud, as if the contract were subsisting and binding, is evidence of an election to treat the contract as valid; so, also, is the payment of purchase money after such knowledge. Dennis v. Jones, 44 N.J. Eq. 513 (E. & A. 1888); Faulkner v. Wassmer, 77 N.J. Eq. 537 (E. & A. 1910); 3 Pomeroy's Equity Jurisprudence (5th ed. 1941), §§ 916-917; 5 Williston on Contracts (Rev. ed. 1937), §§ 1527, 1528; Restatement, Contracts, § 484 (1932).
Since this plaintiff, with full knowledge of the alleged fraud, continued for more than six months to deal with the property as his own, and made the monthly payments on the purchase price, his actions afford plenary evidence of an election to abide by the contract; and once made, this election is irrevocable. Cf. Dennis v. Jones, above; Clampitt, et al., v. Doyle, 73 N.J. Eq. 678 (E. & A. 1908); Faulkner v. Wassmer, above; Kazepis v. North Jersey Holding Co., 111 N.J. Eq. 342 (E. & A. 1932); Snyder v. Czerminski, 108 N.J. Eq. 113 (Ch. 1931); Berger v. Harrison Improvement Co., 108 N.J. Eq. 558 (Ch. 1931). The fact that in making payment of the notes due in November and December, 1946, and in January and February, 1947, the plaintiff attempted to make them without prejudice to his right of rescission, does not alter this conclusion. Kazepis v. North Jersey Holding Co., above.
Judgment affirmed.