50 N.J. Super. 140 (1958)
141 A.2d 342
DEERHURST ESTATES, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
MEADOW HOMES, INC., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 5, 1958.
*141 Messrs. Rubenstein & Glick (Mr. Charles Rubenstein, appearing), attorneys for plaintiff.
Mr. Arthur N. Weitz, attorney for defendant.
DREWEN, J.C.C. (temporarily assigned).
This is a contract action tried without a jury, to resolve the terms of the contract in suit and determine whether or not there was a breach thereof by defendant. The issue of damages, if any, is left for determination by a separate trial, R.R. 4:43-2.
On June 14, 1954 plaintiff's assignor, Joseph S. Lenkowsky, and defendant entered into a contract in writing whereby defendant agreed to sell to Lenkowsky 267 lots located in the Township of East Brunswick, New Jersey, as "laid out and shown on a certain map entitled, `Site Plan, Meadow View Estates, East Brunswick Township, Middlesex County, N.J.,' dated June 20, 1951." This map shows a division of the tract into 359 lots comprising 11 sections, on sections 1 and 3 of which defendant had already built. The remaining nine sections, with the exception of four lots therein reserved by the seller, comprise the lots involved in this transaction. The purchase price was computed on a basis of $425 a lot. On June 18, 1954 the purchaser assigned the contract to the plaintiff, a corporation owned by Lenkowsky. The defendant corporation is owned by M. Michael Meadow, who acted for it throughout these transactions. The lots were conveyed to plaintiff on August *142 2, 1954, for $40,000 cash and a purchase money note and mortgage for the balance. Both plaintiff and defendant are builders and developers, and the contract indicates plaintiff's intention to continue the development of the area commenced by defendant.
The contract of sale contains express warranties and a provision that "* * * warranties not performed before or at closing of title shall survive said closing and remain in full force and effect." Included in the warranties is the following:
"3. Seller represents and warrants that:

* * * * * * * *
(b) The sub-division as outlined in the abovementioned site plan has been tentatively approved by the Planning Board of East Brunswick Township and all other agencies having jurisdiction over subdivision of lands.

* * * * * * * *
(d) There is no regulation under or provision of Zoning, Planning, Building Permit, Building Ordinances of East Brunswick Township which is inconsistent with the original submission of the entire sub-division by seller as outlined by the above site plan as to lot sizes, street layout, grades, street improvements, or other requirements so that there is nothing in said ordinances or regulations thereunder that will prohibit the filing and approval of the remaining 7 sections and the erection thereon of buildings similar to those erected in Sections I and III and similar to the plans filed or proposed for Sections IV and V."
Plaintiff alleges that both these representations and warranties were and are false and untrue in that defendant had not received "tentative approval" from the Planning Board of East Brunswick Township subsequent to January 1, 1954, in accordance with the provisions of L. 1953, c. 433, sec. 18 (N.J.S.A. 40:55-1.18), which became effective on the date last stated; and that as a result of the lack of such approval plaintiff was put to the great additional expense of providing larger lots and of otherwise complying with more stringent specifications and requirements to entitle it to final approval for the building on five of the seven sections referred to in paragraph 3(d) of the contract, which would not have been the case had the warranties been true. *143 Defendant denies that any of the representations and warranties were untrue, but admits that it had not received approval from the planning board in accordance with the provisions of the cited statute (N.J.S.A. 40:55-1.18), its contention being that it had received a preliminary approval prior thereto, and that it is this approval to which the contract refers as "tentative approval."
Plaintiff contends that the parties contracted with reference to the law in effect on the date of the contract and that defendant is precluded from introducing parol evidence to alter, vary or contradict the terms of the contract. Defendant contends the words "tentative approval" were intended to convey the ordinary meaning of the words before the enactment of N.J.S.A. 40:55-1.18; that, since their use is ambiguous, they should be construed against the party who drew the contract and, further, that the plaintiff, by laches, has waived its rights.
Section 18 (N.J.S.A. 40:55-1.18) of the Municipal Planning Act of 1953 (L. 1953, c. 433) provides in its pertinent part as follows:
"The governing body or the planning board, as the case may be, may tentatively approve a plat showing new streets or roads or the resubdivision of land along a mapped street. This tentative approval shall confer upon the applicant the following rights for a three-year period from the date of the tentative approval:
(1) that the general terms and conditions upon which the tentative approval was granted will not be changed.
(2) that the said applicant may submit on or before the expiration date the whole or part or parts of said plat for final approval."
From the stipulation entered into by the parties and the competent evidence at the trial, the following finding of facts is made:
(1) Both parties to the contract of June 14, 1954 and their respective counsel were aware of the enactment of the above statute and the provisions of section 18 thereof, prior to the execution of the writing.
(2) Defendant's counsel perused the writing and made interpolations and excisions before permitting defendant to sign it.
*144 (3) The words "tentatively approved" appear only in paragraph 3(b) of the contract. In the very next paragraph 3(c) the words "have been approved by the Planning Board" are used in the warranty as to sections I, III, IV and V of the subdivision. In paragraph 8(c) (6) the word "approval" is employed in expressing the agreement of the mortgagee (defendant) "to join the application for the approval of sub-division plats if required."
(4) The words "tentatively approve" and "tentative approval" appear for the first time in any New Jersey statute referring to the subdivision of lands, in the Municipal Planning Act of 1953, and then only in the section of the statute set forth above.
(5) The lots indicated on the Site Plan, Meadow View Estates, East Brunswick Township, dated June 20, 1951, referred to in paragraph 2(a) of the contract and on the preliminary plot plan of Meadow View Estates, dated December 13, 1950, are 60 feet wide and 110 feet deep. The latter is referred to as the "preliminary Plot Plan of Prominski Tract" in a letter dated February 15, 1951 from William H. Baker, township engineer, certifying the approval of the map by the East Brunswick Township Planning Board at a meeting on December 13, 1950. The lands delineated on these maps are identical. This is the only approval which the proofs show defendant to have had.
(6) On April 14, 1953 an ordinance amending the ordinance of East Brunswick Township was adopted, which required that "no single family dwelling shall be erected upon a lot smaller than 15,000 square feet or upon a lot which is less than 100 feet in width."
(7) Section II, paragraph 4(f) of the zoning ordinance of December 23, 1952, which provided that "No requirement as to Major Lot Areas or Dimension Requirements shall apply to Developments, plot plan of which are on file with the Planning Board prior to final passage of this Ordinance," was deleted therefrom by an amending ordinance adopted by the Township Committee of East Brunswick Township on December 14, 1954.
(8) On February 9, 1955 the Planning Board of East Brunswick Township by resolution disapproved and rejected subdivision plats for sections 6 and 7 submitted by plaintiff with lot layouts and sizes in accordance with the maps referred to in (5) above, for failure to comply with the minimum requirements of the zoning ordinance of April 14, 1953.
(9) Both parties to the contract are experienced builders and developers and were represented by capable, efficient counsel adept in the negotiation and consummation of agreements of the type here involved.
There is sharp conflict in the testimony as to whether the cited statute, supra, was specifically referred to by the contracting parties in connection with the phrasing of paragraph 3(b) of the document, and whether or not declaration *145 was then made on behalf of defendant that no approval had been had by it under such statute and that defendant in that respect could sell and was offering to sell only what it had and no more. In view of the conclusions of law herein arrived at, a finding of fact upon such conflict would be without significance, for the reason that what would be thus established would tend to show not the sense of the writing but an intent wholly unexpressed therein. The cases infra illuminate the point. Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293 (1953).
The actual intent of the parties is ineffective unless made known in some way in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls. Corn Exchange National Bank & Trust Co., Philadelphia v. Taubel, 113 N.J.L. 605 (E. & A. 1934); Newark Publishers' Ass'n. v. Newark Typographical Union, 22 N.J. 419, 427 (1956); Friedman v. Tappan Development Corp., 22 N.J. 523, 531 (1956). As Judge Learned Hand expresses it:
"* * * a contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort."
Hotchkiss v. National City Bank of New York, 200 F. 287, 293 (D.C.S.D., N.Y. 1911), affirmed sub nom. Ernst v. Mechanics & Metals Nat. Bank, 201 F. 664 (2 Cir. 1912), affirmed sub nom. National City Bank of New York v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913).
In determining the intent of the parties a most cogent factor is their choice of words in which to frame its expression. When the parties here used the words "tentatively approved" they were admittedly aware of the statute of which the words "tentatively approve" and "tentative approval" *146 are a vital feature. "Tentatively approve" and "tentative approval" appear for the first time in section 18 of the act, and there only. They are words of art of unique legal significance, which is apparent from the section in which they appear. The significance of their counterpart, "tentatively approved," in the context of the contract is neither doubtful nor ambiguous. When statutory words of art are invoked by experienced builders, developers and counsel in an agreement of this type, they are not to be isolated but must be related to the context and the contractual scheme as a whole, and their import can only be the unique legal significance they have in the statute.
There are well settled doctrines in the law of New Jersey that parties who enter into transactions in this State must be presumed to have had the New Jersey law in mind and that the law is a silent factor in every contract. Silverstein v. Keane, 19 N.J. 1, 13 (1955). Cf. Gibraltar Factors Corp. v. Slapo, 23 N.J. 459, 465 (1957).
I conclude as a matter of law that the Municipal Planning Act of 1953, and specifically section 18 thereof (N.J.S.A. 40:55-1.18) is applicable to the contract of June 14, 1954. The issue of breach is resolved against defendant in accordance with the finding of facts above set forth. The questions of waiver and laches, if present, bear more properly on the issue of damages and are left for consideration with that issue.
Judgment for plaintiff.