W.A. WRIGHT, INC., a Corporation of the State of New Jersey, and A.C. Excavating, Inc., formerly known as Wrightway Excavation Co., Inc., a Corporation of the State of New Jersey, Plaintiffs,

v.

KDI SYLVAN POOLS, INC., a Delaware corporation, Defendant.

Civ. A. No. 81–0032.

United States District Court,
D. New Jersey.

Aug. 9, 1983.

---

John A. Yacovelle, Somerdale, N.J., for plaintiffs.

Evans, Koelzer, Osborne, Kreizman & Bassler by Harry V. Osborne, II, Red Bank, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

In this breach of contract action, the jury returned a verdict in favor of plaintiffs, W.A. Wright, Inc. (Wright) and A.C. Excavating, Inc. (A.C. Excavating), and against defendant KDI Sylvan Pools, Inc. (KDI). In response to Special Interrogatories prepared by the Court with the consent of counsel, the jury determined that KDI wrongfully terminated its two separate contracts with Wright and A.C. Excavating without good cause. Wright was awarded compensatory damages in the amount of $86,768.00, and punitive damages in the amount of $7,500.00; A.C. Excavating was awarded compensatory damages in the amount of $28,396.00, and punitive damages in the amount of $7,500.00.

Upon return of the jury's verdict, but prior to this Court's entry of judgment, oral application was made on behalf of both plaintiffs for an assessment of prejudgment interest against defendant on the awards of compensatory damages. Plaintiffs seek interest from November 30, 1980, the end of the 1980 season, to the present, on the ground that they have been wrongfully deprived of monies due them during that period. This oral motion, taken under advisement by the Court pursuant to Fed.R.Civ.P. 7(b)(1), is now, *inter alia,* the subject of this Opinion.

Also presently before the Court is a motion by defendant for a new trial[1] pursuant to Fed.R.Civ.P. 59. Specifically, KDI alleges that (1) consideration by the jury of the issue of punitive damages resulted in a miscarriage of justice, because it was not supported by the evidence and was contrary to the laws of the State of New Jersey; (2) the award of damages constituted error be-cause the verdict was against the weight of the evidence and was the result of an improper charge to the jury on the issue of punitive damages; and (3) plaintiffs' amendment to their complaint filed upon leave of this Court after the close of their case and during the presentation of defendant's case, unfairly surprised KDI and prejudiced its ability to defend the action, because the sole witness who could have rebutted the allegations contained therein was unavailable.

For the reasons set forth below, we shall grant plaintiffs' motion for prejudgment interest, and deny defendant's motion for a new trial.

At all times pertinent hereto, plaintiffs were engaged primarily in the construction of swimming pools. The principals in both companies were William A. Wright and his wife, Patricia. On or about February 14, 1980, each plaintiff entered into a separate agreement with defendant KDI which together form the basis of their complaint.

In the contractor agreement between plaintiff Wright and defendant KDI, the latter agreed to recommend Wright for all decks or terrace work on pools sold out of defendant's Cherry Hill, New Jersey office during the 1980 season. In the subcontractor agreement, simultaneously entered into between plaintiff A.C. Excavating and KDI, the former was to perform all excavation work on Sylvan pools sold out of the Cherry Hill office during the same period. The parties estimated that there would be "between 85 and 100 digs." Plaintiffs' Exhibit 1. KDI terminated both contracts on May 16, 1980, prior to the expiration of the 1980 season. Plaintiffs thereafter filed the instant action,[2] seeking both compensatory and punitive damages.

---

1. We note, at the outset, that defendant is unclear as to the type of relief it seeks herein. Its brief in support of its motion is encaptioned "Brief of Defendant, K.D.I. Sylvan Pools, Inc., in Support of a Motion for New Trial on the Issue of Damages." However, the concluding sentence of that brief "requests that a new trial be granted as to both the issue of liability and the issue of damages." We will assume, for purposes of this Opinion, that defendant seeks a new trial on both issues.

2. Plaintiffs originally filed suit in state court. *See W.A. Wright, Inc. and A.C. Excavating, Inc. v. KDI Sylvan Pools, Inc.,* No. L–16141–80 (filed November 22, 1980, N.J.Sup.Ct.Law Div.) It was subsequently removed to this Court, pursuant to 28 U.S.C.A. § 1446(d) (West Supp. 1983), by petition of defendant filed January 5,

Counts I and II of plaintiffs' complaint alleged that they performed or substantially performed all of their deck and excavating work in a good and workmanlike manner, and that the defendant breached both contracts by terminating them without good cause. In Count III of their complaint, plaintiffs each sought punitive damages, originally on the ground that defendant wrongfully interfered with their business relationships with their customers, by making false and malicious statements thereto. After the close of their case at trial, and during the presentation of defendant's case, plaintiffs withdrew their claims in Count III, and moved, pursuant to Fed.R.Civ.P. 15(a), for leave to amend the complaint to substitute a new basis for the punitive damage claims.

The amended third count alleged that defendant intentionally sought to injure plaintiffs in the conduct of their business, by entering into the contracts at issue with full knowledge that those agreements violated a consent decree of the Court of Common Pleas of Montgomery County, Pennsylvania. The decree was issued pursuant to an action brought by Anthony Industries, Inc. (Anthony), a competitor of KDI, against KDI and several of its employees, seeking to restrain them from engaging in unfair business practices. *See Anthony Industries, Inc. v. KDI Sylvan Pools, Inc., et al.,* No. 79–23298 (Pa.C.P. Montgomery County, filed January 21, 1980); *see also* Plaintiffs' Exhibit 45. The decree provided that for a specified period of time, neither Anthony nor KDI would solicit for employment anyone currently employed by the other. It also prohibited either party from unlawfully interfering with the other's business relationships with its contractors or subcontractors, during the same period. *See* Plaintiffs' Exhibit 45. In the instant case, plaintiffs alleged that KDI knew it was prohibited from entering into the contracts at issue, because plaintiffs were, at that time, under contract to do similar work for Anthony.

1981. The Court's jurisdiction is based on 28

Defendant opposed plaintiffs' Rule 15 motion on two grounds. First, KDI claimed, the motion was untimely and prejudicial because the allegations contained in the proposed third count were not raised in the final pretrial order, and leave to amend was being sought long after plaintiffs' case had been completed. Therefore, defendant maintained, it was being unfairly surprised by new allegations to which it was unable to prepare an adequate defense. Second, defendant argued, plaintiffs' claims for punitive damages should be stricken because, under New Jersey law, punitive damages are not recoverable in a breach of contract action.

Oral argument by counsel for both parties was heard, and plaintiffs were granted leave to amend their complaint. An opinion was placed on the record, in which we considered and rejected both of defendant's arguments in opposition to plaintiffs' motion.

As to defendant's claim of untimeliness and unfair surprise, we ruled that Fed.R. Civ.P. 15(a) provides this Court with broad discretionary authority to permit a party to amend its pleading, even after the close of its case at trial. We further held that the defendant here was in no way prejudiced by the amendment at issue, because it was fully aware of the circumstances which formed the basis thereof.

As to the punitive damages issue, we determined that damages are generally not recoverable in this state in contract actions unless the facts of the case fit within the scope of a recognized exception to this general rule. *Sandler v. Lawn-a-Mat Chemical & Equipment Corp.,* 141 N.J.Super. 437, 451, 358 A.2d 805, 813 (App.Div.), *certif. denied,* 71 N.J. 503, 366 A.2d 658 (1976); *see also Mayer v. Development Corp. of America,* 541 F.Supp. 828, 861–62 (D.N.J.1981). However, we further found that New Jersey courts also permit an award of punitive damages where there exists such an aggravated set of circumstances that punitive damages are appropriate notwithstanding the contract form of the action, even

U.S.C.A. § 1332 (West Supp.1983).

though it may be beyond the scope of the recognized exceptions. *Id.* Finally, we determined that under the facts of this case, defendant's wanton disregard of a court order, and its conduct prior to and thereafter, constituted sufficiently egregious circumstances to warrant submission of plaintiffs' punitive damage claims to the jury.

## PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST

Both contracts in this action provide that they shall be interpreted in accordance with the laws of Pennsylvania. *See* Plaintiffs' Exhibit 1, ¶ 13, and Plaintiffs' Exhibit 2, ¶ 13. These provisions arguably raise the threshold issue whether the law of Pennsylvania or New Jersey applies herein.

This action was tried to a jury in a New Jersey district court. A conflict of laws issue was not raised in the pleadings or response thereto, or during any of the pretrial discovery proceedings. Defendant's trial brief cited the contract provisions in question, but noted that Pennsylvania and New Jersey law were indistinguishable on all relevant issues. During the trial, all matters pertinent thereto were disposed of in accordance with the laws of New Jersey, including plaintiffs' *in litem* motion to amend their complaint that is now, *inter alia,* the subject of defendant's Rule 59 motion.

■ In diversity cases, the district court must apply the choice of law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 494, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). On the issue of damages, New Jersey's choice of law rule is that "the state whose law governs the substantive legal questions also governs the prejudgment interest issue." *Draper v. Airco, Inc.,* 580 F.2d 91, 98 (3d Cir.1978), relying on *Busik v. Levine,* 63 N.J. 351, 307 A.2d 571 (1973). In their respective memoranda, in support of and in opposition to plaintiffs' motion, the parties concur that as applied to the facts of this case, there is no real distinction between the prejudgment interest laws at issue. *Compare* N.J.R. 4:42–11(b) *with* Pa.R.Civ.P.

238. Under these circumstances, we find no genuine dispute as to the applicable state law, and we shall proceed to resolve the matters now before us under the laws of New Jersey.

■ New Jersey law permits the recovery of prejudgment interest in tort actions as a matter of right. N.J.R. 4:42–11(b). In other actions, where the claim is for liquidated or unliquidated damages, prejudgment interest is awarded in accordance with equitable principles. *See, e.g., Bak-A-Lum Corp. of America v. Alcoa Building Products,* 69 N.J. 123, 131, 351 A.2d 349, 353 (1976) (liquidated and unliquidated damages); *Rova Farms Resort v. Investors Insurance Co.,* 65 N.J. 474, 506, 323 A.2d 495, 512 (1974) (liquidated damages); *Small v. Schuncke,* 42 N.J. 407, 416, 201 A.2d 56, 60 (1964) (liquidated damages); *Deerhurst Estates v. Meadow Homes, Inc.,* 64 N.J.Super. 134, 153, 165 A.2d 543, 554 (App.Div.1960), *certif. denied,* 34 N.J. 66, 167 A.2d 55 (1961) (unliquidated damages); *Jardine v. Donna Brook Corp.,* 42 N.J.Super. 332, 341, 126 A.2d 372, 377 (App.Div.1956) (unliquidated damages); *Kamens v. Fortugno,* 108 N.J. Super. 544, 548–49, 262 A.2d 11, 15 (Ch.Div. 1970) (liquidated damages). *But see McDonald v. Mianecki,* 159 N.J.Super. 1, 25–26, 386 A.2d 1325, 1338–39 (App.Div.1978), aff'd, 79 N.J. 275, 398 A.2d 1283 (1979).

■ In the case at bar, plaintiffs seek prejudgment interest on that portion of the verdict which awarded them compensatory damages for the lost profits they sustained as a result of defendant's wrongful termination of their respective contracts. The value of their claims, which was contested by the defendant at all times pertinent hereto, was left to the discretion of the jury based upon the evidence presented. Under these circumstances, we find the claims to be liquidated.

New Jersey courts generally award prejudgment interest on claims for unliquidated damages only when "consideration of justice and fair dealing so demand." *Buono Sales, Inc. v. Chrysler Motors Corp.,* 449 F.2d 715, 723 (3d Cir.1971); *see also Coleco*

*Industries, Inc. v. Berman,* 423 F.Supp. 275, 323 (E.D.Pa.1976) (applying New Jersey law), *modified on other grounds,* 567 F.2d 569 (1977); *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978); *Deerhurst Estates, supra,* 64 N.J.Super. at 153, 165 A.2d at 554; *Jardine Estates, Inc., supra,* 42 N.J.Super. at 341, 126 A.2d at 377. However, the New Jersey Supreme Court has, on at least one occasion, applied equitable principles and awarded prejudgment interest on a claim for unliquidated damages. In *Bak-A-Lum Corp. of America, supra,* defendant manufacturer was found liable for failing to notify plaintiff of its intention to terminate their exclusive distributorship agreement, which by its terms permitted termination thereof without cause only on reasonable notice. 69 N.J. at 129, 351 A.2d at 351. The court held that defendant breached an implied covenant of dealing in good faith by persuading plaintiff to place a large order and expand its warehouse facilities predicated solely on continuation of the exclusive distributorship, with full knowledge that it secretly intended to terminate that agreement shortly thereafter. *Id.* at 130, 351 A.2d at 352. The court determined that under these circumstances, 20 months was a reasonable period of notice, and awarded plaintiff damages for lost profits and prejudgment interest from the date notice should have been given. *Id.* at 131, 351 A.2d at 352.

■ We find the facts in *Bak-A-Lum Corp. of America* to be substantially similar to the instant action. Therefore, the reasoning applied by the Supreme Court of New Jersey in that case is equally applicable here. The jury's determination that the defendant's conduct in this case merited two awards against it of punitive damages supports a finding that the equities herein clearly lie with the plaintiffs.

The Supreme Court of New Jersey has held that the purpose of an award of prejudgment interest is "compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." *Busik, supra,* 63 N.J. at 359, 307 A.2d at 575. Plaintiffs here were deprived of lost profits in the amounts of $86,768.00 and $28,396.00, respectively. They contend, and we agree, that had defendant not breached the contracts at issue, they would have earned and been in possession of those profits on or about November 30, 1980, the close of the 1980 season. For all the foregoing reasons, therefore, we find that plaintiffs Wright and A.C. Excavating are each entitled to interest, on their compensatory damage claims, at the rate of 12% from November 30, 1980 to May 23, 1983, the date of entry of judgment. *See* N.J.R. 4:42–11(b); *Simons v. Saaz,* 147 N.J.Super. 143, 370 A.2d 889 (App.Div.1977).

## DEFENDANT'S MOTION FOR A NEW TRIAL

Fed.R.Civ.P. 59(a) provides that:

> a new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; ....

It is axiomatic that the decision to grant or deny a motion for a new trial, pursuant to Rule 59, is within the sound discretion of the trial court. *Zegan v. Central Railroad Company of New Jersey,* 266 F.2d 101, 104 (3d Cir.1959); *see generally* 6A J. Moore, Moore's Federal Practice § 59.05(5) (2d ed. 1982). It is equally well established that a new trial will not be granted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Lewis v. Kepple,* 185 F.Supp. 884, 887 (W.D.Pa.1960), *aff'd per curiam,* 287 F.2d 409 (3d Cir.1961); *see generally* 11 C. Wright and A. Miller, Federal Practice and Procedure § 2803 (1973).

Defendant asserts that it is entitled to a new trial on the issue of damages, on the ground that the awards of punitive damages were unsupported by the evidence, and contrary to the laws of this state.

■ Defendant previously raised, and this Court rejected, its argument that New Jersey does not permit recovery of punitive damages in contract actions under any circumstances. Defendant now alleges that our determination was based on the erroneous assumption that a special fiduciary relationship existed between the parties. However, as we previously noted, New Jersey law permits recovery of punitive damages in contract actions where the claim therefor is based on sufficiently egregious circumstances. *See Sandler, supra,* 141 N.J.Super. at 451, 358 A.2d at 813; *see also Mayer, supra,* 541 F.Supp. at 861–62. Our decision to submit plaintiffs' claims for punitive damages to the jury in this case was not based, as defendant contends, on a finding that it breached a special fiduciary relationship with plaintiffs. Rather, it was based solely on the uncontroverted evidence that defendant entered into the contracts at issue with full knowledge that such action violated the court order previously discussed. The jury's awards of punitive damages were within its discretion, and eminently reasonable under the circumstances of this case. We find nothing contained in defendant's brief in support of its motion to warrant a reversal of those decisions.

Defendant also argues that it is entitled to a new trial on the issue of damages because the verdict was against the weight of the evidence, and resulted from an improper charge to the jury on the punitive damages issue. Specifically, defendant contends that the awards of compensatory damages were erroneously based on a finding that there were 100 pools sold out of the Cherry Hill office during the 1980 season. KDI maintains that the proofs presented at trial indicated that only 85 pools were sold during the relevant time period.

■ We find this argument meritless. The excavation contract provided that "estimated work for 1980 [was] within 85 to 100 digs." Plaintiffs' Exhibit 1. The sales manager of defendant's Cherry Hill office, whose deposition testimony was read into the record, estimated that there were 90 digs. Although evidence was also presented that 85 digs were performed, it was entirely within the province of the jury to consider all the evidence, weigh the credibility of the witnesses, and calculate a verdict based on the determination that 100 pools were sold.

■ Defendant additionally claims that once the jury was instructed by this Court that it had the discretion to award punitive damages, it felt free to go beyond the proofs presented in awarding compensatory damages. This argument is both speculative and wholly unsupported by the record. The Special Interrogatories returned by the jury clearly establish that it separately and painstakingly calculated the respective awards of compensatory and punitive damages at issue. Therefore, we find that the verdict was neither against the weight of the evidence, nor the result of any improper charge.

Finally, defendant argues that plaintiffs' *in litem* amendment to their complaint unfairly surprised KDI and prejudiced its ability to defend this action. Defendant's motion for a new trial as to the issue of liability appears to rest upon this ground. *See infra* note 1.

After plaintiffs were granted leave to amend their complaint, they presented a rebuttal witness, A. Richard Gerber, Esquire (Gerber). Gerber represented Anthony as local counsel in the Montgomery County action, and signed the consent decree pursuant thereto in his representative capacity. Subpoenaed by plaintiffs to appear before this Court, Gerber testified as to the facts giving rise to the decree. He further testified that his clients' concern that the decree was being violated during the spring of 1980 resulted in two conferences in the chambers of the Honorable Mason Avrigan, the former judge of the Court of Common Pleas, who presided over the aforementioned action.[3]

---

**3.** Although defendant appears to maintain that only one conference took place in Judge Avrigan's chambers, Gerber testified that more than one such conference was held. Transcript of Testimony of A. Richard Gerber at pp. 23–24.

In the brief in support of its motion, defendant alleges that plaintiffs should not have been permitted to present Gerber as a witness on their behalf, because his testimony was predicated solely on the amended third count of plaintiffs' complaint. If leave to amend the complaint was erroneously granted, defendant reasons, it follows that any testimony occasioned by that amendment was inadmissible.

■ We find defendant's argument on this point completely specious. We previously rejected KDI's claim that this Court improperly granted plaintiffs leave to amend their complaint during the trial. More importantly, however, Gerber's testimony was occasioned not by the amendment to the complaint, but by the cross examination testimony of Howard Wertman, during the presentation of defendant's case. Wertman, an employee of KDI, testified that he was formerly employed by Anthony Pools, and was a named defendant in the Montgomery County action. He admitted, during cross examination, that he knew of the court decree at issue prior to entering into the contracts with plaintiffs, but denied that those contracts were terminated because of the decree. The decree was then admitted into evidence. Therefore, Gerber's testimony would have been admissible even if plaintiffs had not amended their complaint.

Defendant further contends that it was surprised by Gerber's testimony, and prejudiced by his statement that a conference in Judge Avrigan's chambers took place in the spring of 1980, because it was unable, on such short notice, to present any witnesses who might have impeached Gerber's credibility as a witness on that point. In support of this claim, defendant has submitted two affidavits, one by Arthur Lefkoe, Esquire (Lefkoe), who represented KDI in the Montgomery County action, the other by Judge Avrigan. Lefkoe's affidavit provides that he was unable to appear before this Court during the trial, because he was recuperating from treatment for a detached retina, and therefore unavailable. He indicates that had he been able to testify, he would have refuted Gerber's testimony that a meeting before the Judge was held in the spring of 1980, because he has no recollection thereof. Judge Avrigan's affidavit simply states that although such a meeting may have occurred, he has no reference to it in his file.

■ Defendant's claim of unfair surprise and prejudice is wholly unsupported by the circumstances herein. Gerber was named as a person with relevant knowledge in a letter dated September 23, 1982 from counsel for plaintiffs to counsel for defendant, amending plaintiffs' Answers to Interrogatories. Therefore, KDI knew, approximately seven months prior to trial, that plaintiffs might present Gerber as a witness. Nevertheless, KDI inexplicably made no request for any information pertinent thereto.

Defendant places much weight on the alleged misstatement by Gerber that a meeting took place in the judge's chambers in the spring of 1980, which was immediately prior to the termination of the contracts at issue. However, neither of the affidavits submitted in support of its motion actually refute that statement. Although defendant urges this Court to infer from the affidavits that the meeting never took place, neither Lefkoe nor Judge Avrigan deny that it occurred. They simply assert that they have no recollection thereof, or documentation to show that it was held on a particular date. Indeed, their affidavits suggest only that judges and attorneys are, on occasion, less than meticulous record keepers.

We disagree completely with defendant's assertion that the jury verdict in this case turned largely on Gerber's testimony, thereby resulting in prejudicial error. The jury need not have relied on Gerber's testimony at all to reach the verdict it did. The consent decree speaks for itself. Moreover, the jury could have reasonably inferred from the cross examination testimony of Howard Wertman that the defendant abruptly and wrongfully terminated the con-

tracts at issue, because despite Wertman's assertion to the contrary, it knew it violated the consent decree, and feared the consequences of a possible contempt proceeding.

Throughout the course of this trial, this Court carefully observed the manner and demeanor of all the witnesses, listened to their testimony, and considered all the evidence pertinent hereto. We are unable to find that Gerber's testimony, and the jury's reliance thereon, either unfairly surprised KDI, or prejudiced its ability to defend this action.

It is well settled that a motion for a new trial on the ground of surprise will be denied when the movant failed to seek a continuance during the trial. *Melanson Co. v. Hupp Corp.,* 391 F.2d 902, 903 (3d Cir. 1968); *Moylan v. Siciliano,* 292 F.2d 704, 705 (9th Cir.1961). Gerber's uncontroverted testimony established that in addition to Lefkoe, KDI was also represented at the conference in Judge Avrigan's chambers by James Garrity, Esquire (Garrity). Defendant fails to explain why, at the conclusion of Gerber's testimony, it sought no continuance to enable Garrity, Lefkoe, Judge Avrigan or any other witness to appear before this Court. Moreover, although defendant claims that Lefkoe was physically unable to appear on its behalf during the trial, this situation in no way precluded defendant from seeking a continuance to obtain his testimony, or from deposing Lefkoe during the trial and submitting his deposition testimony into evidence. Having failed to do so prior to entry of judgment, defendant may not now seek to reopen the issues in this case.

For all the foregoing reasons, plaintiffs' motion for prejudgment interest shall be granted, and defendant's motion for a new trial shall be denied. The Court shall enter an appropriate order.